1 Ariz. App. 389 (1965)
403 P.2d 324
BOARD OF EDUCATION, TUCSON HIGH SCHOOL DISTRICT NO. 1, Delbert L. Secrist, Nan E. Lyons, William J. Pistor, Dan C. McKinney and Norval Jasper, Members of the Board of Education, Tucson High School District No. 1, Robert D. Morrow, Superintendent of Schools, Tucson High School District No. 1, and Thomas L. Lee, Assistant Superintendent of Schools, Tucson High School District No. 1, Appellants,
v.
John W. WILLIAMS, Appellee.[*]
2 CA-CIV 85.
Court of Appeals of Arizona.
June 22, 1965.
*391 Norman E. Green, Pima County Atty., Lawrence Ollason, Sp. Deputy County Atty., Tucson, for appellants.
Johnson, Darrow, D'Antonio, Hayes & Morales, by J. Mercer Johnson and Lawrence P. D'Antonio, Tucson, for appellee.
MOLLOY, Judge.
This case arises under this state's teacher's tenure act, A.R.S. § 15-251 et seq. It is an appeal from a judgment granting a writ of mandamus compelling the respondent Board of Education to enter into a contract of teaching with the petitioner for the school year 1963-1964 and from a judgment rendered after the issuance of a writ of certiorari which judgment annulled and set aside a decision of the Board to relieve the petitioner of duties as a counselor, to transfer him to another school, and to warn petitioner that his dismissal might be recommended.
The petitioner, prior to the institution of these proceedings, had been employed by the Board of Education of High School District No. 1, Pima County, for a number of year. Under applicable law, we are concerned with four consecutive annual contracts, the first of such being for the 1959-1960 school year and the last one being for 1962-1963 school year. In each of these documents it was stated that the contract was one between "John Wesley Williams, Teacher-Counselor" and the respondent, that the annual salary included a certain amount for "counseling," and that the time of employment was from a date approximately in mid-August until the end of the first week in June of the following calendar year. In the last of these contracts, the petitioner was employed at an annual salary of $8,731.00, which included $406.00 for counseling.
On March 22, 1963, the petitioner was asked to come to a conference at which the principal of his school and the respondent, Dr. Thomas Lee, Assistant Superintendent of School for Tucson High School District No. 1, were present. At this conference, the petitioner was told, and this communication was subsequently confirmed by a written memorandum, that:
"In view of the numerous instances of difficulties this year in your counseling and teaching work, to be effective with the 1963-64 school year we are relieving you of counseling duties and transferring you to another high school."
The written communication continued by saying that the action being taken:
"* * * should be regarded in the nature of a probationary move, because if your quality of teaching next year doesn't measure up to the quality expected in this district, we will recommend your termination."
Neither at this meeting, nor at a subsequent one with Dr. Lee called at the request of petitioner's counsel, were any specific written charges made against the petitioner nor were any witnesses called to substantiate any charges, though this was requested by the petitioner through counsel at the second conference.
Subsequently the petitioner was tendered a contract for the school year 1963-1964 at an annual salary of $8,675.00 ($56.00 less than the prior contract], which described the petitioner as a "teacher," and which, contrary to the previous contracts, did not have any indication that there was any special allowance for counseling. The new contract gave date of commencement as August 27, 1963, which was approximately two weeks later than the other contracts mentioned above.
On petition, the lower court granted an alternative writ of mandamus and a writ of certiorari. At a hearing upon these *392 writs, it was established that counselors receive two weeks extra pay for acting as such, because they report for work two weeks earlier at the commencement of the school year than other teachers. It was also established that the contract proffered for the new school year included an annual increment in salary of $350.00. The extra two weeks pay for counseling [$406.00] had not been included in the contract which was tendered, thus resulting in $56.00 less annual pay.
After the hearing, the trial court rendered two "judgments," one on the petition for writ of mandamus and the other on the petition for writ of certiorari. In addition, the court issued a formal peremptory writ of mandamus. The appeal was taken from all three of these orders.
The judgment on the writ of mandamus and the writ itself commanded the respondent School Board to enter into the contract with the petitioner for the school year 1963-1964 "upon the same terms, conditions and salary" as provided in the contract for the 1962-1963 school year. The judgment on the writ of certiorari declared that the "decision of March 22, 1963" to relieve the petitioner of his counseling duties, to transfer him to another high school and to "place him on probation" was beyond the "jurisdiction" of the respondents and was void and of no force and effect because made without a statement of the alleged charges and without the petitioner being confronted with witnesses or afforded the right to produce witnesses.
In the lower court, the respondents had maintained that the petitioner was not a "continuing teacher" under the provisions of A.R.S. § 15-251 et seq., for the reason that he had not for three consecutive years been employed as a teacher "devoting not less than fifty per cent of his time to classroom teaching" [A.R.S. § 15-251, subsec. A, par. 2.]. The testimony at the hearing disclosed that the petitioner had been devoting in past years more of his time to counseling than to classroom work. On appeal, there appears to have been an abandonment of this position, as there is no assignment of error which raises the question of whether the petitioner is a "continuing teacher" under the subject Tenure Act of this state.
There was no showing by the petitioner that his new assignment  teaching mathematics at a newly constructed high school  is burdensome upon him or one for which he is not fully qualified. There is no contention made by appellee that the assignment was made as a subterfuge to avoid his tenure and force him into a resignation.
On appeal, assignments of error are that the court erred in holding that the Arizona Teacher's Tenure Act prohibited the respondents from withdrawing the petitioner from his counseling assignments, in ordering respondent Board of Education to enter into a new contract upon the same terms, conditions and salary as contained in the contract for the prior year and in issuing a writ of mandamus as to the respondent Board in that a writ of mandamus was not a proper remedy.
The propriety of a remedy being questioned, this should be answered first. The appellants have cited no authority holding that a writ of mandamus is not a proper remedy to require the execution of a contract required by terms of the Arizona Teacher's Tenure Act. In this state, as in most of the states having similar acts, it has been held that mandamus is an appropriate remedy to require the plain commandments of the subject act to be obeyed. Tempe Union High School District v. Hopkins, 76 Ariz. 228, 262 P.2d 387 [1953].
The trial court found, and this court holds correctly, that the proffered contract which contained a salary reduction was a violation of the subject act. Two pertinent provisions are these:
A.R.S. § 15-252:
"Subject to the provisions of § 15-257, the contract of employment of a probationary or continuing teacher for *393 a school year shall be deemed automatically renewed for the next ensuing school year, unless, on or before March 15 immediately preceding the ensuing school year, the school board, a member thereof acting on behalf of the board, or the superintendent of the school district, gives notice to the teacher of the termination of his contract." [Emphasis supplied]
A.R.S. § 15-257 [in part]:
"Nothing in this article shall be interpreted to prevent a school board from reducing salaries or eliminating teachers in a school district in order to effectuate economies in the operation of the district or to improve the efficient conduct and administration of the schools of the district, but no reduction in the salary of a continuing teacher shall be made except in accordance with a general salary reduction in the school district by which he is employed, and in such case the reduction shall be applied equitably among all such teachers. * * *" [Emphasis supplied]
In this case, the petitioner was not notified prior to March 15 that his contract was not being renewed and there was no general salary reduction in the school district.
This court holds, therefore, that the petitioner was entitled to a renewal of his contract without a salary reduction.
The contention of the respondents that the pay for counseling was "extra" pay for "extra" work, which could be terminated at the will of the Board of Education is rejected. The respondents raise no contention that "counseling" is not "teaching" under the subject act. Even were it not for this admission, this court would be of the opinion that the act should be given a liberal interpretation to carry out its obvious purpose to give protection to the teaching profession from arbitrary dismissals and reductions in salary and that the word "teaching" as used in the act contemplates the counseling of students by teachers specially trained in this field. The salary as expressed in the contract is one gross sum; this was the petitioner's contract; under the facts of this case he was entitled to have it renewed without salary reduction. Board of Education of Nelson County v. Lawrence, 375 S.W.2d 830 [Ky. 1963]; Ditty v. Weiss et al. [Malone v. Hayden], 329 Pa. 213, 197 A. 344, 358 [1938]. Were the Board to be permitted to reduce a salary by eliminating a portion of the time of teaching, this could too easily be used as a device to reduce salary contrary to the explicit mandate of the subject statute.
As to the elimination of the counseling duties and the transfer of the petitioner to a new high school, this court sees no "decision" which can be set aside by the court. A board of education, such as the respondent, has general control over the school system committed to its supervision. A.R.S. § 15-545, § 15-442 and § 15-443. That the general conduct and supervision of the public school system shall be vested in such governing boards as provided by these statutes is contemplated by our Constitution. Art. 11, § 2, of the Arizona Constitution, A.R.S.
The Arizona Teacher's Tenure Act is, in the particular area under discussion, an exception to the board powers of the responsible school board to administer its affairs. This Act provides that no continuing teacher shall be "dismissed or his contract of employment terminated" unless there be notice and a right to hearing. A.R.S. § 15-253. Also, there is an inhibition upon the suspension of a teacher. A.R.S. § 15-256.
But this court finds no inhibition in the Act against calling a conference to discuss problems which the school administration may rightfully or wrongfully believe exist as to a particular teacher. The taking of an action, such as the one under consideration, "in the nature of a probationary move" does not violate any provision of the Act. There is no requirement that there be a hearing prior to an *394 administrative decision to make a recommendation for discharge. A fortiori, there is no requirement that there be a hearing before an administrator may decide to issue a warning that unless the quality of performance increases a decision to recommend dismissal will be made.
The tenure granted by the Act does not include the right to teach any particular class or classes nor to teach at any particular school. Cullen v. Board of Education, 126 Cal. App. 510, 15 P.2d 227 [1st Dis. 1932]; Mitchell v. Board of Trustees, 5 Cal. App.2d 64, 42 P.2d 397 [4th Dis. 1935]; Alexander v. School Dist. No. 1, 84 Or. 172, 164 P. 711 [1917]; County Board of Education of Richmond County v. Young, 1 S.E.2d 739 [Ga. 1939]; Downey v. School Committee of Lowell, 305 Mass. 329, 25 N.E.2d 738 [1940].
Under teacher's tenure statutes in other states, which do not contain an explicit prohibition against a salary reduction, several courts have come to the conclusion that the reduction in the "rank and grade" of a teacher, when attendant with a salary reduction, is a "dismissal," prohibited by the Act. The Cullen and Mitchell cases, supra, are examples of such holdings. In a state such as ours, where there is a specific prohibition against reduction of salary, this court sees no need to extend the language of the Act so as to carry this implied prohibition against reduction in rank or grade. However, even if this be the law of this state, there is no showing here that a teacher is of any lower rank or grade than a counselor. The testimony of the petitioner was unequivocal that the additional pay was solely for the additional two weeks work. There is no showing that a counselor has any supervisory authority over other teachers nor that a counselor is regarded as of a higher professional stature than an ordinary teacher. Accordingly there has been no reduction in "rank and grade" of the petitioner. Henderson v. City of St. Paul, 236 Minn. 353, 53 N.W.2d 21 [1952]; In re Santee's Appeal, 397 Pa. 601, 156 A.2d 830 [1959].
The contract of the 1962-1963 school year has the following provision:
"That the above-named individual, who holds or will hold a legal certificate to teach in the public high schools of Arizona during the period of this contract, hereby agrees to teach such grade, grades, or subjects, or perform such administrative duties in the public high schools, or administrative offices as the Board of Education may assign for the period beginning August 13, 1962 and ending June 7, 1963 and well and faithfully perform the duties assigned according to law and the rules legally established for the government and operation of the schools." (Emphasis supplied]
The fact that the petitioner's name is stated as "John Wesley Williams, Teacher-Counselor" in the contract does not, in view of this clear language, prohibit the respondent School Board from assigning to the petitioner such duties as the Board may determine so long as the Board does not use such power as a subterfuge to attempt to avoid the Act, such as making assignments which might be so burdensome or inappropriate as to force a resignation.
The "decision" in the "nature of a probationary move" is not one that is subject to being reviewed by a writ of certiorari. A writ of certiorari both at the common law and under our statute [A.R.S. § 12-2001] is one that reviews the actions of an inferior tribunal while exercising judicial or quasi-judicial functions. 14 Am.Jur.2d, Certiorari, § 16, p. 793; 14 C.J.S. Certiorari § 17, p. 142; Faulkner v. Board of Supervisors, 17 Ariz. 139, 149 P. 382 [1915]. There was nothing judicial or quasi-judicial about the conference in question. It was purely an administrative procedure. It must be remembered that a school board exercises administrative, legislative and quasi-judicial functions. The "triple personality" of such a board has been commented upon in this language:
"A school board is a part of the executive department, but, in the operation *395 of our public school system, it exercises not only purely administrative functions but others of a legislative character, and still others of a quasi judicial character. Of the administrative type are the hiring of teachers, their assignment in the school system, and their discharge, once the grounds therefor are established. Of the legislative type are the making of rules and the determination of policies governing such hiring, assignment, and discharge of teachers. Of the quasi judicial type is the power to hear and determine proceedings for the removal of teachers for cause. * * *" State ex rel. Ging v. Board of Education of City of Duluth, 213 Minn. 550, 7 N.W. 2d 544, 555 [1943].
Were the court to review "decisions" such as that taken at the subject conference, the court believes there would be no end to the judicial review of the multifarious administrative problems arising in school districts on a day-to-day basis. It is not felt that the judgment of the courts in connection with these problems of school administration would be any better than that of the officials elected to the positions of responsibility as to the particular school districts. The following additional quotation from the case of State ex rel. Ging v. Board of Education of City of Duluth, supra, is deemed pertinent:
"The adoption of a liberal construction to combat the evils to which the law [Minnesota Teacher's Tenure Act] was directed does not permit a construction so benevolent toward teachers that, by eliminating one evil, we create another: that of transferring from the school boards, the duly elected representatives of the parents, taxpayers and other electors of the school district, to the teachers and the courts the management, supervision, and control of our school systems vested in such boards by other statutes." [7 N.W.2d p. 555]
For the foregoing reasons, the judgment of the lower court granting a writ of mandamus requiring the respondent Board of Education to renew the teaching contract of the petitioner upon the same terms, conditions and salary as in the contract for the prior year is affirmed; the judgment of the lower court as to the writ of certiorari is reversed.
KRUCKER, C.J., and HATHAWAY, J., concur.
NOTES
[*] This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8205. The matter was referred to this court pursuant to § 12-120.23, A.R.S.