568 P.2d 1094

**The STATE of Arizona, Petitioner,**

**v.**

**Honorable Ben C. BIRDSALL, Judge of the Superior Court, Respondent,**

**and**

**Robert Ortiz SALCIDO, Real Party in Interest.**

**No. 2 CA–CIV 2536.**

Court of Appeals of Arizona, Division 2.

May 17, 1977.

Rehearing Denied June 29, 1977.

Review Denied Sept. 8, 1977.

---

Stephen D. Neely, Pima County Atty. by Victor A. Wild, Deputy County Atty., Tucson, for petitioner.

Scholl & Kurlander by Harley Kurlander, Tucson, for real party in interest.

## OPINION

HATHAWAY, Judge.

The real party in interest is the defendant in a pending Pima County Superior Court criminal case. He is charged with first degree murder and two counts of assault with a deadly weapon. The murder charge is based on the death of a fourteen year old junior high school student. The defenses disclosed to the state were self-defense, intoxication, and insanity. A motion for disclosure of the deceased victim's school records was filed by defendant pursuant to Rule 15.1(e), Rules of Criminal Procedure, as amended, which provides:

> "Upon motion of the defendant showing that he has substantial need·in the preparation of his case for additional material

or information not otherwise covered by Rule 15.1, and that he is unable without undue hardship to obtain the substantial equivalent by other means, the court in its discretion may order any person to make it available to him. The court may, upon the request of any person affected by the order, vacate or modify the order if compliance would be unreasonable or oppressive."

The respondent court granted the motion for disclosure, over the state's opposition, and ordered the deposition of a school counselor and the issuance of a subpoena duces tecum to the deponent requiring his presence and the production of all the victim's school records. The school board thereupon moved for a protective order, or in the alternative, an order of modification, and the state filed a motion to quash the order for deposition and subpoena duces tecum. It was argued that the school records were protected from disclosure by statute and that the subpoena was too broad. The state alternatively moved for an *in camera* inspection of the school records before disclosure and that disclosure be limited to records of incidents, if any, wherein the deceased was shown to be an aggressor. The respondent court modified the disclosure order to exclude the victim's scholastic records but to include all his disciplinary records.

 We agree with the state that since the victim's prior bad acts, if any, were not known to the defendant, they are not admissible in evidence. *Mendez v. State*, 27 Ariz. 82, 229 P. 1032 (1924); *State v. Canedo*, 563 P.2d 315 (Ariz.App., filed March 1, 1977). However, here the issue of self-defense is raised, and therefore evidence of the deceased's reputation for belligerence and aggressiveness is admissible. *State v. Griffin*, 99 Ariz. 43, 406 P.2d 397 (1965). The respondent court, in granting the defendant's motion for disclosure, apparently concluded that he had substantial need for information relevant to his theory of self-defense and that it would impose an undue hardship upon him to require him to resort to other means, such as interviewing the entire junior high school population, in an attempt to discover the deceased victim's reputation as an aggressor. Since the disclosure authorized under the criminal rules dealing with discovery is available in the trial court's discretion, appellate courts do not interfere in the absence of a clear abuse of discretion. *State v. Kevil*, 111 Ariz. 240, 527 P.2d 285 (1974). We find no abuse of discretion in requiring disclosure. As we shall subsequently discuss, however, we believe the order was too broad in scope.

We do not agree with the state that disclosure of the victim's school records was barred by the federal and Arizona statutes pertaining to students' records. 20 U.S. C.A. § 1232g(b)(1), provides that no funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein other than directory information as defined in another section) of students without the written consent of their parents to any individual, agency, or organization other than the ones specifically designated therein. 20 U.S.C.A. § 1232g(b)(2), further provides that no funds shall be made available to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information and educational records other than directory information, or as permitted under paragraph (1) of the subsection, unless there is written consent from the student's parents or such information is furnished in compliance with judicial order or pursuant to a lawfully issued subpoena. (In the latter instance, the educational institution or agency is required to notify the parents and students in advance of compliance with such order or subpoena).

A.R.S. § 15–151 et seq., which became effective May 14, 1974, defines the right of parents and guardians to pupil records. A.R.S. § 15–152 provides:

"Pupil records are considered professional and confidential and shall be available under the following circumstances:

1. To the parents or guardian of the pupil, unless a parent's parental rights have been severed by a court.
2. To the professional staff of the school district in which the information was obtained.
3. In accordance with written instructions of a parent or guardian to transfer the records to another school, institution or agency.
4. To any state or federal agency as long as such records do not identify the student and upon the approval of the local school district board.
5. With respect to grade transcripts, to any other school or educational institution to which the student is attending or has applied for admittance.
6. To a pupil or person over the age of eighteen whose records are maintained by the school."

First of all, as to the federal statute, it should be noted that it prohibits a *practice* or *policy* of disclosure of educational records except in designated instances, and expressly recognizes that disclosure may be made in response to a subpoena duces tecum or other judicial order. Responsibility for notification of parents and student is placed upon educational institutions and not on the person seeking disclosure of the records. Thus we conclude that the state's reliance upon the federal statute is misplaced.

■ Furthermore, we do not believe that A.R.S. § 15–152 which describes pupil records as "professional and confidential" and sets forth permissible use of such records, clothes such records in a blanket of absolute privilege and therefore not subject to disclosure pursuant to a judicial order. We are of the opinion that A.R.S. § 15–152 was not intended to prevent disclosure of information pursuant to a court order, when pertinent to a legal inquiry, but was merely intended to prevent voluntary disclosure except under the designated circumstances. See *State v. Church*, 35 Wash.2d 170, 211 P.2d 701 (1949); *Marceau v. Orange Realty, Inc.*, 97 N.H. 497, 92 A.2d 656 (1952); *Jones v. Giannola*, 252 S.W.2d 660 (Mo.App.1952); *Bell v. Bankers Life and Casualty Company*, 327 Ill.App. 321, 64 N.E.2d 204 (1945); *Panella v. U. S.*, 139 F.Supp. 159 (S.D.N.Y.1956). Furthermore, we find no merit in petitioner's argument that the legislature, by excluding from A.R.S. § 15–152 a provision concerning subpoenas which was included in the initial draft, intended to exempt school records from the operation of a subpoena. There was no need for legislative recognition of the subpoena power since a court in which an action is pending has inherent power to issue subpoenas duces tecum. 81 Am.Jur.2d Witnesses, § 14.

■ We cannot fault the respondent judge for concluding that in the interest of justice disclosure of information pertinent to the defendant's assertion of self-defense was necessary. However, we do not believe that the broad intrusion into the school records was warranted. The only materials in the victim's records which would be relevant to the self-defense issue are incidents involving the victim's aggressiveness or assaultive tendencies. Under these circumstances, the defendant was entitled to only *limited* access to the school records. See *State ex rel. DeConcini v. Superior Court*, 20 Ariz.App. 33, 509 P.2d 1070 (1973); *City of Tucson v. Superior Court*, 25 Ariz.App. 512, 544 P.2d 1113 (1976). The respondent court therefore should have granted the petitioner's motion for an *in camera* inspection by the court in the presence of counsel to determine whether there is anything in the record germane to the issues involved. As we stated in *City of Tucson*, this inspection procedure "protects information from improper disclosure and at the same time gives a litigant access to essential information." 25 Ariz.App. at 515, 544 P.2d at 1116.

The lower court is therefore directed to modify its order so as to limit its scope and to proceed in a manner not inconsistent with this opinion.

HOWARD, C. J., and RICHMOND, J., concur.