969 P.2d 200

John G. BOLM, Plaintiff/Appellee/Cross–Appellant,

v.

CUSTODIAN OF RECORDS OF the TUCSON POLICE DEPARTMENT; and the City of Tucson, Defendants/Appellants/Cross–Appellees.

No. 2CA–CV 97–0182.

Court of Appeals of Arizona, Division 2, Department A.

Nov. 25, 1998.

Richard M. Martinez, Tucson, for Plaintiff/Appellee/ Cross–Appellant.

Thomas J. Berning, City Attorney by Catherine M. Shovlin, Tucson, for Defendants/Appellants/Cross–Appellees.

## OPINION

PELANDER, Presiding Judge.

¶ 1 This case raises issues concerning the interplay between Arizona's Public Records Law, A.R.S. §§ 39–121 to 39–125, and Arizona common law relating to discovery of police records in the course of litigation.[1] Defendants/appellants, the Tucson Police Department (TPD) Custodian of Records and the City of Tucson (collectively the City), appeal from the trial court's judgment ordering the City to produce certain public records and awarding attorney's fees to plaintiff/appellee John Bolm. In a cross-appeal, Bolm challenges the trial court's partial denial of his public records request. We affirm that portion of the judgment that specifies which portions of the TPD records the City is required or not required to produce, but vacate the award of attorney's fees and costs to Bolm.

## BACKGROUND

¶ 2 The underlying facts are undisputed. Bolm is an attorney who represents an individual named Donnie Lopez in three lawsuits against the City and two TPD officers. Bolm requested TPD to produce "all person-

nel records" of the two officers pursuant to A.R.S. §§ 39–121 and 39–121.01. The documents he requested included the officers' hiring and training records, any evaluations, commendations, reprimands, compliments, complaints, and internal affairs (IAD) investigation documents relating to those officers.

¶ 3 The City's counsel sent Bolm the officers' training records, a summary of TPD's records relating to one of the officers, and a letter informing Bolm that she was trying "to determine whether public records requests are affected in anyway [sic] if the subject of the request and/or the entity are involved in litigation and subject to the court sanctioned rules of discovery." Counsel's letter also stated that she had reviewed the officers' personnel records and IAD files and, although information in those files "may constitute public records if the public records law is applicable in this situation," she had "determined that there is nothing in these files that would be discoverable if requested in the pending litigation."

¶ 4 Bolm, through his own attorney, then filed a special action pursuant to A.R.S. § 39–121.02(A). In response, the City asserted that Bolm "should not be permitted to circumvent the disclosure rules through the illegitimate use of the public records process" and, because Bolm's client was suing the City, the trial court "should conduct an *in camera* inspection of the files and determine what is relevant to the litigation." After an evidentiary order to show cause hearing covering four days, the trial court concluded that the TPD personnel evaluations and IAD records were protected from production, but the officers' hiring records, official commendations, and official reprimands (hereinafter referred to as "hiring and official records") were not. The court further concluded that the City had acted arbitrarily and capriciously in withholding the latter materials and therefore awarded Bolm $12,000 in attorney's fees and $1,017 in costs pursuant to A.R.S. § 39–121.02(B). After the hearings had concluded, the trial court declined the City's request for an in camera inspection of the records Bolm had requested. This appeal

---

1. *See generally* Kristine Cordier Karnezis, Annotation, *Validity, Construction, and Application of*   *Statutory Provisions Relating to Public Access to Police Records*, 82 A.L.R.3d 19 (1978).

and cross-appeal followed the court's entry of judgment and subsequent denial of the City's motion for reconsideration of the attorney's fee award.

## DISCUSSION

### I. Appeal

¶ 5 "Under Arizona's Public Records Law, 'public records and other matters . . . shall be open to inspection by any person.'" *Scottsdale Unified School Dist. v. KPNX Broadcasting Co.*, 191 Ariz. 297, 300 ¶ 9, 955 P.2d 534, 537 ¶ 9 (1998), *quoting* A.R.S. § 39–121. In addition to certain statutory exceptions,

> [t]his public right of inspection may also be curtailed in the interest of "confidentiality, privacy, or the best interests of the state." *Carlson* [*v. Pima County*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984) ]. If these interests outweigh the public's right of inspection, the [government] can properly refuse inspection. *See id.* The [government] has the burden of overcoming "the legal presumption favoring disclosure." *Cox Arizona Publications, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993) (citing *Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984)).

*Scottsdale Unified School Dist.*, 191 Ariz. at 300 ¶ 9, 955 P.2d at 537 ¶ 9.

¶ 6 The trial court concluded, and the City does not dispute, that all of the TPD documents Bolm requested are "public records." *See City of Grand Forks v. Grand Forks Herald, Inc.*, 307 N.W.2d 572 (N.D. 1981) (municipal personnel files are public records); *Toledo Police Patrolmen's Ass'n, Local 10 v. City of Toledo*, 94 Ohio App.3d 734, 641 N.E.2d 799 (Ohio Ct.App.1994) (police department internal affairs documents are public records). The trial court also concluded that the City acted arbitrarily and

capriciously in categorizing the hiring and official records "as being part of either the 'personnel evaluation' process or as part of 'internal affairs' records when these do not fall within the logic and reasons stated for non-disclosure of the latter." Based on that ruling, the trial court assessed attorney's fees against the City pursuant to A.R.S. § 39–121.02(B), which permits such an award if a person was "wrongfully denied access to public records" and the "custodian of the records acted in bad faith or in an arbitrary or capricious manner." *Cox Arizona Publications*, 175 Ariz. at 14, 852 P.2d at 1197.

¶ 7 We review de novo the issue of whether a denial of access to public records is wrongful. *Cox Arizona Publications; KPNX–TV v. Superior Court,* 183 Ariz. 589, 905 P.2d 598 (App.1995). We will uphold a trial court's finding that a records custodian acted in bad faith, arbitrarily or capriciously unless it is clearly erroneous and will reverse a fee award only for abuse of discretion. *Cox Arizona Publications; KPNX–TV; Star Publishing Co. v. Pima County Attorney's Office,* 181 Ariz. 432, 891 P.2d 899 (App.1994).

¶ 8 Citing numerous Arizona cases,[2] the City asserts that "criminal defendants and civil litigants are only entitled to discover information in personnel or internal affairs records if a court, after an *in camera* inspection, determines that the information is relevant to the prosecution or litigation." According to the City, "[i]f interested parties are so restricted, it is axiomatic that the documents are not subject to indiscriminate public disclosure." The City describes its conduct in this matter as "deliberate" and "thoughtful," certainly not "arbitrary and capricious," because it merely "attempted to structure a test case to resolve the issue of how the discovery case law and public records law interact." Thus, the City argues, the trial court clearly erred in reaching a

---

**2.** *See State v. Cano*, 154 Ariz. 447, 743 P.2d 956 (App.1987); *State ex rel. Dean v. City Court,* 140 Ariz. 75, 680 P.2d 211 (App.1984); *State v. Superior Court (Cook),* 132 Ariz. 374, 645 P.2d 1288 (App.1982); *Pima County v. Harte,* 131 Ariz. 68, 638 P.2d 735 (App.1981); *City of Tucson v. Superior Court (Vega),* 25 Ariz.App. 512, 544 P.2d 1113 (1976); *State ex rel. DeConcini v. Superior Court (Franze),* 20 Ariz.App. 33, 509 P.2d 1070

(1973), *overruled on other grounds, State v. Superior Court (Cook).* The City's citation to this court's decision in *State v. Roscoe,* 182 Ariz. 332, 897 P.2d 634 (App.1994), is inappropriate because our supreme court vacated that opinion. *State v. Roscoe,* 185 Ariz. 68, 912 P.2d 1297 (1996). *See Stroud v. Dorr–Oliver, Inc.,* 112 Ariz. 403, 542 P.2d 1102 (1975).

contrary conclusion and assessing attorney's fees and costs against it for its failure to voluntarily produce the hiring and official records. Because many of the legal issues surrounding Bolm's public records request are unsettled, we agree with that assertion but reject most of the City's substantive arguments.

¶ 9 Most of the cases on which the City relies only involved requests for a law enforcement agency's internal affairs records,[3] which the trial court did not require the City to produce here. In *Pima County v. Harte*, 131 Ariz. 68, 638 P.2d 735 (App.1981), however, this court specifically addressed police personnel records in the litigation/discovery context. In that case, which involved a civil action against two officers, we ordered the trial court to conduct an in camera inspection of the law enforcement agency's personnel and internal affairs records to determine which portions, if any, were relevant to the plaintiff's claims for relief. Relying in part on *Harte*, the City contends that its withholding of the hiring and official records could not have been arbitrary and capricious because "the case law denies disclosure to criminal defendants and civil litigants unless there is an in camera review and a finding of relevance."

■ ¶ 10 The City's argument is too broad and partially inapplicable to the public records context. A person's right to public records under the Public Records Law is not conditioned on his or her showing, or a court finding, that the documents are relevant to anything. Rather, a public records request may be made in the absence or in advance of any litigation or anticipated claim. In such a situation, there is no issue, claim or defense against which to measure relevance. Thus, although relevance is an important factor in evaluating and determining the discoverability of police records in a litigation context, *see* Rule 26(b)(1), 26.1(a)(9), Ariz. R. Civ. P., 16 A.R.S.; *Harte*, the Public Records Law contains no relevancy requirement, and we are not inclined to judicially engraft one. *See Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083, 1093 (Colo.1980) (recognizing right to inspect and copy governmental records under open records law "without limitation as to the reason or reasons for which the inspection is undertaken"); *M. Farbman & Sons, Inc. v. New York City Health and Hospitals Corp.*, 62 N.Y.2d 75, 476 N.Y.S.2d 69, 71, 464 N.E.2d 437 (1984) (freedom of information law "does not require that the party requesting records make any showing of need, good faith or legitimate purpose").

■ ¶ 11 Moreover, that litigation was pending between the City and Bolm's client when Bolm made his public records request does not affect the City's obligation to comply with the Public Records Law.[4] *Cf.* 1989

---

3. *See, e.g., Cano*, 154 Ariz. at 448, 743 P.2d at 957 (criminal defendant sought "internal records" of officer consisting of "reports, complaints, departmental investigations and actions taken"; records not discoverable unless admissible); *State ex rel. Dean* (upholding order for in camera review of IAD records relating to arresting officer); *Cook* (criminal defendant sought IAD records); *Vega*, 25 Ariz.App. at 514, 544 P.2d at 1115 (requiring in camera inspection of " 'written reports and/or complaints relating to any disciplinary proceedings' " against two officers); *Franze* (criminal defendant sought IAD records).

4. *See, e.g., Fairley v. Superior Court*, 66 Cal. App.4th 1414, 78 Cal.Rptr.2d 648, 652 (Ct.App. 1998) ("the whole purpose of the [Public Records Act] is to shed public light on the activities of our governmental entities, and it is a small price to pay to require disclosure of public records even to a litigant opposing the government, outside of the rules of discovery"), *opinion modified on other grounds on denial of rehearing; M. Farb-*

*man & Sons*, 476 N.Y.S.2d at 70, 464 N.E.2d 437 (access to records of government agency under freedom of information law "is not affected by the fact that there is pending or potential litigation between the person making the request and the agency"); *State ex rel. Lank v. Rzentkowski*, 141 Wis.2d 846, 416 N.W.2d 635, 637 (Wis.Ct. App.1987) (public records law entitled litigant to materials requested because "the legislature [had] not carved out an exception to the requirement of disclosure when the public records sought are germane to pending litigation between the requestor and the public entity"). Unlike Arizona's Public Records Law, some states' statutes expressly permit a public entity to withhold records specifically prepared for use in pending litigation to which the public agency is a party. *See, e.g.*, Cal. Gov't Code § 6254(b), (c) (West 1995); *City of Hemet v. Superior Court*, 37 Cal.App.4th 1411, 44 Cal.Rptr.2d 532 (Ct.App. 1995). In addition, some states' public records laws specifically exempt certain police records, such as investigative reports or personnel records, from general public inspection. *See, e.g.*,

Ariz. Op. Atty. Gen. 41 ("nothing in [Arizona cases on public records disclosure] suggests that officials may deny access to public records simply because the records might be used to establish tort liability on the part of the state").[5] Nor does the fact of pending litigation automatically negate a finding of arbitrary and capricious conduct in withholding documents.

¶ 12 Aside from its misplaced argument based on a nonexistent relevance requirement, the City also urges us to hold that police personnel and IAD records "are only subject to disclosure if a court, after an *in camera* inspection, determines that the public interest in the disclosure of the information outweighs the officer's interest in privacy and confidentiality." That standard essentially contemplates a balancing test, which our supreme court already has adopted and approved in the public records context. *See Scottsdale Unified School Dist.; Carlson.* Based on the evidence adduced at the hearing, the trial court implicitly and appropriately conducted a balancing test in determining that the TPD personnel evaluations and IAD records were not subject to disclosure. The trial court also noted, however, that the City presented no evidence to support a finding that the hiring and official records should be insulated from disclosure under a balancing test, and the City does not dispute that.

■ ¶ 13 We decline the City's invitation to fashion a blanket rule protecting law enforcement agency personnel and IAD records from a public records request, because the balancing test must be applied on a case-by-case basis "to determine whether a particular record should be released." *Wisconsin Newspress, Inc. v. School District of Sheboygan Falls,* 199 Wis.2d 768, 546 N.W.2d 143, 147 (Wis.1996). The "public interest in disclosure and nondisclosure [of police IAD rec-

ords] may vary depending on the circumstances of an investigation, and the nature of the documents produced." *Newark Morning Ledger Co. v. Saginaw County Sheriff,* 204 Mich.App. 215, 514 N.W.2d 213, 218 (Mich. Ct.App.1994) (noting that location of records in personnel file is not determinative and emphasizing need for balancing of interests). *See also Reinstein v. Police Commissioner of Boston,* 378 Mass. 281, 391 N.E.2d 881, 886 (Mass.1979), *quoting* Mass. Gen. Laws ch. 4, § 7, clause 26(f) (1993) (public records law provided no blanket exemption for police records, but rather "invite[d] case-by-case consideration of whether access 'would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest' "). If the City believes that certain law enforcement agency records should not be open to public inspection, a remedy must be sought with the legislature. *See City of Grand Forks; Lewiston Daily Sun v. City of Lewiston,* 596 A.2d 619, 622 (Me.1991) ("It is the function of the legislature, and not of the courts," to resolve "the conflict that exists between the public interest in open access to governmental records, on the one hand, and the public interest in protecting the integrity of criminal investigations and in preventing unfair prejudice to public employees, on the other.").

¶ 14 We agree with the City, however, that a trial court generally should conduct an in camera inspection in a situation such as this. Our supreme court repeatedly has stated that "where the [trial] court's discretion has been properly invoked," the preferred practice is for that court "to make [an] *in camera* inspection[ ] of the relevant documents and balance the rights of the parties." *Mitchell,* 142 Ariz. at 334, 690 P.2d at 53. *See also Cox Arizona Publications; Carlson; Mathews v. Pyle,* 75 Ariz. 76, 251 P.2d 893 (1952); *Little v. Gilkinson,* 130 Ariz. 415, 636 P.2d 663 (App.1981). Depending on the na-

Ark.Code Ann. § 25–19–105(b)(6) (Michie, WESTLAW through 1997 Sess.); Colo.Rev.Stat. § 24–72–305(5) (WESTLAW through 1998 Second Reg. Sess.); Ga.Code Ann. § 50–18–72(a)(3)–(5) (WESTLAW through 1998 Reg. Sess.); Ky.Rev.Stat. Ann. § 61.878(1)(h) (Banks–Baldwin, WESTLAW through 1997 First Ex. Sess.); Me.Rev.Stat. Ann. tit. 30–A, § 2702(1)(B)(5), tit. 16, § 614 (West, WESTLAW

through 1997 Second Sp. Sess.); Mich. Comp. Laws § 15.243(1)(t)(ix) (WESTLAW through P.A. 1998, No. 20).

5. Although opinions of the Attorney General are advisory, a court may consider them as persuasive authority. *Hillhouse v. Rice School Dist. No. 20,* 151 Ariz. 348, 727 P.2d 843 (App.1986).

ture and volume of the documents at issue, an in camera inspection may further the interests of judicial economy in many cases by obviating the need for lengthy evidentiary hearings.[6]

¶ 15 This brings us to the issue of whether the trial court's award of attorney's fees was appropriate in this case. The City reviewed the requested materials, produced the officers' training records, disclosed to Bolm those records it considered relevant, provided him with a detailed list of the contents of one of the officer's TPD files, and submitted the remaining records to the trial court for in camera review, which the court ultimately refused to conduct. In view of those steps that the City took and the absence of any controlling Arizona authority previously addressing the interplay between the Public Records Law and Arizona common law relating to discovery of police records in litigation, the City did not act "in an arbitrary or capricious manner." A.R.S. § 39–121.02(B). The trial court erred in reaching a contrary conclusion.

¶ 16 " 'Where there is room for two opinions, the action is not arbitrary and capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.' " *Arizona Board of Regents v. Phoenix Newspapers*, 167 Ariz. 254, 259, 806 P.2d 348, 353 (1991), *quoting Tucson Public Schools, Dist. No. 1 v. Green*, 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972). Although we disagree with most of the propositions the City advances, there was "room for two opinions" on the previously unresolved issue of whether a law enforcement agency is required to voluntarily produce its personnel and IAD records pursuant to a public records request, when the records clearly relate to pending litigation and there has been no showing or finding of relevance and no in camera inspection. In addition, the record does not indicate, and the trial court did not find, that the City acted dishonestly or without due consideration.

¶ 17 This case is unlike *Cox Arizona Publications*, where the custodian "neither produced the records for an *in camera* review, nor offered a redacted version to the court or media" prior to trial. 175 Ariz. at 15, 852 P.2d at 1199. Similarly, the record does not reflect that the City considered or maintained its hiring and official records separately and distinctly from its personnel evaluations and IAD records, which the trial court found the City to have properly withheld. The record also does not reflect, nor did the trial court find, that the City submitted an entire record for in camera inspection knowing that only part of it might be protected from disclosure. *See KPNX*; *Star Publishing*.

¶ 18 In sum, we conclude that the trial court erred in finding that the City acted arbitrarily and capriciously and, therefore, abused its discretion in awarding attorney's fees and costs to Bolm. Because the City has neither contended nor established that the trial court erred in ordering disclosure of the TPD hiring and official records, however, we uphold that portion of the judgment despite the trial court's refusal to conduct an in camera inspection.

## II. Cross–Appeal

¶ 19 Bolm contends the trial court erred in denying his request for disclosure of the TPD personnel evaluations and IAD records because the City "made no specific showing that disclosure of the specific records requested would result in any specific harm." We disagree. Adopting the testimony of the City's three witnesses, the trial court made extensive, detailed findings to support its conclusion that the City properly withheld those materials. Based on the evidence relating to those documents, the trial court found that "the normal public policy of disclosure is outweighed by the countervailing interests of confidentiality, privacy and concern about disclosures being detrimental to the best interests of the public." In the absence of a transcript of the testimony upon which the trial court relied, we presume that

---

6. The TPD documents that the City furnished to the trial court are well organized, labeled, and indexed. They are not so voluminous as to render the City's request for an in camera inspection unreasonable or the trial court's task too onerous.

42

the record supported its findings and conclusions.[7] *Renner v. Kehl*, 150 Ariz. 94, 722 P.2d 262 (1986); *Baker v. Baker*, 183 Ariz. 70, 900 P.2d 764 (App.1995); *Lewis v. Oliver*, 178 Ariz. 330, 873 P.2d 668 (App.1993).

¶ 20   Bolm's contentions to the contrary are unpersuasive.  The *Star Publishing* case is inapposite because the county attorney's office there never examined the records at issue, offered only speculation to support its blanket denial of the disclosure request, and "the record [was] devoid of substantive content."   181 Ariz. at 434, 891 P.2d at 901. *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989), does not support Bolm's broad assertion that TPD and its officers "have no right of privacy in their performance evaluations and internal affairs records."   That contention and Bolm's argument that police privacy interests extend only to information specifically exempt from disclosure under A.R.S. § 39–123(A) ignore the firmly established rule that a public agency may "deny or restrict access where recognition of the interests of privacy, confidentiality, or the best interest of the [public agency] in carrying out its legitimate activities outweigh the general policy of open access."   *Carlson*, 141 Ariz. at 491, 687 P.2d at 1246.   Accordingly, we cannot say the trial court improperly balanced all the evidence presented at the hearing, or that the court clearly erred in implicitly determining that the City sufficiently overcame the presumption of disclosure as to the personnel evaluations and IAD records.

## DISPOSITION

¶ 21   We vacate the trial court's award of attorney's fees and costs to Bolm and affirm the trial court's judgment in all other respects.   In our discretion, we deny Bolm's request for attorney's fees on appeal.

WILLIAM E. DRUKE, Chief Judge, and M. JAN FLÓREZ, Judge, concur.

7. The record contains the depositions of Jill Vogel and Kevin Gilmartin, Ph.D., as well as various articles or studies by Dr. Gilmartin and Dr. Kinicki.  Although those items were admitted into evidence, the trial court expressly based most of its findings on the City's witnesses' testimony at the hearing.  Bolm refers to the transcript of Dr. Kinicki's cross-examination (which was not filed with this court) and to the Vogel and Gilmartin depositions in support of his argument, but the trial court relied on the testimony of all three City witnesses in its entirety.