OPINION
ZLAKET, Justice.
Cox Arizona Publications, Inc. and Phoenix Newspapers, Inc. challenge a decision of the court of appeals vacating an award of attorneys’ fees and costs against former Maricopa County Attorney Tom Collins. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12-120.-24. We reverse and reinstate the award.
FACTUAL BACKGROUND
On April 17, 1987, Phoenix Police Chief Ruben Ortega and Maricopa County Attorney Tom Collins held a press conference to announce grand jury indictments of several then-current and former members of the Phoenix Suns basketball team, as well as other individuals. The indictments arose out of an investigation of illegal drugs and gambling.
That same day, a reporter for The Mesa Tribune made a written request to the Phoenix police department for access to its investigative reports. Three days later, an Arizona Republic reporter made a similar request. In response, the police began to review and edit the documents for release to the press.
On April 22, the county attorney’s office served the police department with a subpoena duces tecum, ordering the surrender *13 of the investigative reports. The department complied by delivering the original and all existing photocopies of the documents to the county attorney’s office. It then denied the reporters' requests on the ground that it no longer possessed any reports.
In letters dated May 14 and 18, the reporters filed requests with Collins to examine the documents pursuant to the Arizona Public Records Law, A.R.S. § 39-121 et seq. Collins refused.
On May 20, the newspapers filed a special action in superior court, requesting that Collins and Ortega be ordered to release the documents. In a motion to dismiss, those officials argued that a “gag order” entered by Judge Michael Ryan in the related criminal cases precluded them from complying with the newspapers’ requests. That order prohibited extrajudicial “statements or releases concerning the merits of the charges, motions, evidence or arguments to be adduced by either side, or trial tactics or strategy.”
The newspapers were granted leave to seek modification or clarification of Judge Ryan’s order. On June 24, Judge Ryan declined modification but ruled that the order was not intended to interfere with the special action. He further indicated that Collins and Ortega could not use his order “as a shield to hide behind” in the special action.
On September 25, Judge Jeffrey Cates held a hearing on the special action. Neither Collins nor the State identified specific portions of the records that would justify withholding them from the press. Instead, they advanced arguments based on generalized claims of broad state interest. For example, they urged that releasing the documents would jeopardize fair trials for the defendants, hamper ongoing investigations and prosecutions, burden prosecutors to an unreasonable extent, inhibit future witnesses from speaking with police, violate grand jury secrecy laws, and impair the privacy and confidentiality interests of persons mentioned in the reports. Collins also cited E.R. 3.6(a) and 3.8(e), Arizona Rules of Professional Conduct, Ariz. R. Sup.Ct. Rule 42, 17A A.R.S., contending that his ethical obligation to refrain from making extrajudicial statements about pending cases prevented him from disclosing the documents.
When the court asked why the records were not being offered for an in camera inspection, the reply was that such a procedure would be too burdensome and it would be impossible to determine what should or should not be released before the case was closed.
On October 6, the court ordered Collins to release a copy of the report to the newspapers, stating:
The defendants have expressed only generalized concerns that disclosure of investigative reports would be detrimental to trials and investigations. No specific instances of harm in this case from disclosure of particular portions of this report were presented to the Court.
Defendants having failed to articulate specific circumstances of potential harm which would result from disclosure,
IT IS ORDERED that defendants forthwith provide a copy of the investigative report to plaintiffs’ attorney.
Collins did not release the report. Rather, he sought review by special action in the court of appeals on October 19. Following oral argument, the court of appeals accepted jurisdiction and stayed proceedings in the superior court. On December 22, Collins filed a notice with the court of appeals that the criminal proceedings were completed. That court then declared the special action moot, vacated the stay, declined jurisdiction, and ordered the case returned to the superior court.
On January 15, 1988, Collins released a redacted version of the report to the newspapers and presented a complete copy to the court for an in camera inspection. In an order dated February 17, the judge denied the newspapers’ requests for any of the redacted portions, or anything related to the grand jury proceedings. He concluded that the redacted records were sufficient to satisfy the newspapers’ original demands.
Pursuant to A.R.S. § 39-121.02(B), the newspapers filed a motion for attorneys’ fees and costs. That statute authorizes an award of attorneys’ fees to a person wrongfully denied access to public records if the custodian of the records acted in bad faith or in an arbitrary or capricious manner. The court granted the motion and awarded the newspapers $30,000 in attor *14 neys’ fees, ruling that Collins’ failure to produce a redacted version of the report until after the completion of the criminal proceedings was wrongful, arbitrary and capricious. The judge did not find bad faith. He noted, however, that “[h]ad there been an earlier in-camera review of the record, it is likely that this extensive litigation would have been avoided from that point forward.”
Collins appealed and the court of appeals reversed. Cox Arizona Publications, Inc. v. Collins, 169 Ariz. 189, 202, 818 P.2d 174, 187 (Ct.App.1991).
DISCUSSION
A court has discretion to award attorneys’ fees under A.R.S. § 39-121.02(B) if two conditions are met. First, a person must have been wrongfully deprived of access to public records. “Wrongful” here means simply that the person denied the records was, in fact, entitled to them. Second, the court must find that the custodian of records acted in bad faith or in an arbitrary or capricious manner.
Several standards of review apply here. Whether the denial of access to public records is wrongful is an issue of law which we review de novo. See Arizona Board of Regents v. Phoenix Newspapers, Inc., 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991). A trial court’s finding that a custodian has acted in bad faith, arbitrarily or capriciously will be upheld unless clearly erroneous. See Schade v. Diethrich, 158 Ariz. 1, 7, 760 P.2d 1050, 1056 (1988). A fee award will be reversed only where there has been an abuse of discretion. See Blumenthal v. Teets, 155 Ariz. 123, 131, 745 P.2d 181, 189 (Ct.App.1987) (trial court did not abuse its discretion in awarding fees under A.R.S. § 10-049(B)).
The parties do not dispute that the reports in question were “public records,” see Little v. Gilkinson, 130 Ariz. 415, 416, 636 P.2d 663, 664 (Ct.App.1981); see also Carlson v. Pima County, 141 Ariz. 487, 490, 687 P.2d 1242, 1245 (1984), and that no statutory exception to disclosure applies here. Collins argues only that legitimate state interests and his own ethical obligations compelled him not to release the police reports. See Mathews v. Pyle, 75 Ariz. 76, 80-81, 251 P.2d 893, 896 (1952); and Carlson, 141 Ariz. at 490, 687 P.2d at 1245.
In upholding Collins’ position, the court of appeals stated:
Neither reporters nor the public ... are entitled to examine and photocopy police reports in an active ongoing criminal prosecution, because the countervailing interests of due process, confidentiality, privacy and the best interests of the state make disclosure inappropriate.
169 Ariz. at 201, 818 P.2d at 186. We cannot support such a sweeping exemption from the public records laws of this state. Although the balancing scheme described in Mathews, 75 Ariz. at 80-81, 251 P.2d at 896, might, in a particular and exceptional case, lead to a conclusion similar to that reached by the court of appeals, the blanket rule advanced by that court contravenes the strong policy favoring open disclosure and access, as articulated in Arizona statutes and case law. The legislature has not carved out such a broad exemption, nor do we.
The burden fell squarely upon Collins, as a public official, to overcome the legal presumption favoring disclosure. Mitchell v. Superior Court, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984). In his correspondence to the media and his arguments to the trial court, Collins argued in global generalities of the possible harm that might result from the release of police records. However, because reports of ongoing police investigations are not generally exempt from our public records law, it was incumbent upon Collins to specifically demonstrate how production of the documents would violate rights of privacy or confidentiality, or would be “detrimental to the best interests of the state.” He did not attempt to make such a showing. Cf. Arizona Board of Regents, 167 Ariz. at 258, 806 P.2d at 352 (Board of Regents demonstrated specific instances where publicity proved detrimental to university president search process).
Collins also argues that E.R. 3.6(a) and 3.8(e), Arizona Rules of Professional Conduct, Ariz. R. Sup.Ct. Rule 42, 17A A.R.S., which prohibit a prosecutor from making extrajudicial statements relating to criminal cases, prevented him from releasing the reports to the press. We disagree. Simply handing over public rec *15-27 ords to reporters without comment is not necessarily an “extrajudicial statement.” See Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775, 780 (Fla.App. 1985). Furthermore, the contents of public records are generally exempt from the foregoing ethical restrictions. See E.R. 3.6(c)(2).
Nothing we say here should be taken to mean that a public official is free to release investigative reports or other public records with impunity. As we stated in Mitchell, 142 Ariz. at 334, 690 P.2d at 53 (1984):
We have always recognized that an “unlimited right of inspection might lead to substantial and irreparable public or private harm,” Carlson v. Pima County, supra, and, where the court’s discretion has been properly invoked, have asked trial courts to make in camera inspections of the relevant documents and balance the rights of the parties.
The record before us contains ample basis for the superior court’s conclusion that Collins wrongfully denied the newspapers access to the police reports, or at least portions of them, and in so doing acted in an arbitrary and capricious manner. He decided on his own what to release and when to release it, even to the court. He neither produced the records for an in camera review, nor offered a redacted version to the court or media until after the criminal trial was over. Having set himself up as sole judge and jury, Collins took the chance that his decision would be viewed as arbitrary and capricious. He cannot now complain.
The court of appeals’ opinion is vacated and the superior court’s award is reinstated.
FELDMAN, C.J., and MOELLER, V.C.J., and MARTONE, J., concur.