875 P.2d 837

**STAR PUBLISHING COMPANY, a corporation; and Hipolito R. Corella, Petitioners/Appellees,**

v.

**Bruce O. PARKS, Chief Medical Examiner, Pima County, Respondent/Appellant.**

No. 2 CA–CV 93–0108.

Court of Appeals of Arizona, Division Two, Department A.

Nov. 16, 1993.

Review and Cross–Petition for Review Denied July 6, 1994.

Meehan & Associates by Michael J. Meehan, Tucson, for petitioners/appellees.

Stephen D. Neeley, Pima County Atty. by Michael E. Owen, Tucson, for respondent/appellant.

## OPINION

LIVERMORE, Presiding Judge.

Plaintiff Star Publishing Company brought this special action in superior court under A.R.S. § 39–121.02 against defendant Bruce Parks as chief medical examiner, Pima County Forensic Center, for the release of autopsy reports on three named individuals. The County resisted production of these public records until the families of the decedents had been notified. It also argued that the Star had to pay a $45.00 fee because it was seeking the records for a commercial purpose under A.R.S. § 39–121.03. The County now appeals from adverse rulings on both points. We affirm.

■■■ The parties are agreed that the autopsy reports are public records under A.R.S. §§ 11–594 and –597. The County argues, however, that the presumption in favor of free access to such records is overcome by its interest in insuring that the privacy interests of relatives of a decedent are protected, thus protecting itself from lawsuits by those relatives for the release of the report. The County proposed to protect itself by notifying relatives of the request for the report, giving them fifteen days to object, and then, should they object, an additional twenty days to bring suit to prevent release of the report. We agree with the trial court that the County cannot keep all autopsy reports secret for up to an extra month on the proposition that some few reports might be legitimately kept secret. *See Carlson v. Pima County,* 141 Ariz. 487, 687 P.2d 1242 (1984). If disclosure is to be avoided, the public entity must point to specific risks with respect to a specific disclosure; it is insufficient to hypothesize cases where secrecy might prevail and then contend that the hypothetical controls all cases. There being no record why privacy considerations mandated retention of the records in this case, the trial court properly

ordered production. Because the County is protected from liability by a qualified privilege under *Carlson* for the release of the reports, the County's argument that its policy would protect it from liability is meritless.[1] The County was already protected.

■■■ We also agree with the ruling of the trial court that the Star did not seek the reports for a "commercial purpose." Such a purpose is defined in A.R.S. § 39–121.03 as:

> the use of a public record for the purpose of sale or resale or for the purpose of producing a document containing all or part of the copy, printout or photograph for sale or the obtaining of names and addresses from such public records for the purpose of solicitation or the sale of such names and addresses to another for the purpose of solicitation or for any purpose in which the purchaser can reasonably anticipate the receipt of monetary gain from the direct or indirect use of such public record.

We believe this section to be aimed at the direct economic exploitation of public records not at the use of information gathered from public records in one's trade or business. Thus, the reproduction of a public report or a group of public records for sale as such would be a commercial purpose. Learning facts from public records that might inform one in a daily occupation or might be newsworthy would not be a commercial purpose. We recognize that the "direct or indirect use" portion of the final clause could permit a broader interpretation of commercial purpose. We reject that interpretation because it is inconsistent with the whole tenor of the public records statutes to make access freely available so that public criticism of governmental activity may be fostered and because imposing special fees on the press raises substantial constitutional questions. *New Times, Inc. v. Arizona Board of Regents,* 110 Ariz. 367, 519 P.2d 169 (1974).

■■■ The County's final argument is that because A.R.S. § 39–121.02(B) provides for a discretionary award of costs and attorneys' fees when records are withheld in bad faith,

---

1. The privilege in *Carlson* related to an action for defamation. The policy underlying the privilege is equally applicable to a privacy action. The privilege must apply there, as well. *See Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1966).

costs cannot be recovered under the general costs statute, A.R.S. § 12–341. We disagree. We believe § 39–121.02(B) was intended to provide the additional remedy of attorneys' fees where bad faith action was present, not to eliminate the mandatory award of costs to a prevailing party under § 12–341.

Affirmed. Appellees' request for attorneys' fees on appeal is denied.

LACAGNINA and FERNANDEZ, JJ., concur.